IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CATHERINE and LARRY JONES,

        Plaintiffs,

v.                       No.

SHAUNA, INC. d/b/a SOLITAIRE HOMES,
and GEORGE SULIMA,

        Defendants.

02 OCT 24  PM 2: 57

CIV-02-1342 DJS KBM

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1.      This case involves fraudulent misrepresentations in the sale and financing of a mobile home. Solitaire Homes sold Mr. and Mrs. Jones a mobile home and altered the documents after the Plaintiffs signed them. The Retail Installment Contract did not contain a full and accurate payment schedule, in violation of federal law. That contract and the Purchase Agreement contain charges in excess of those agreed to by Plaintiffs.

### Jurisdiction and Venue

2.      This Court has jurisdiction under the Truth in Lending Act ("TILA"), 15 U.S.C. §1640(e) and 28 U.S.C. §§ 1331 and 1337. The events complained of took place in this District.

### Parties

3.      Plaintiffs Catherine and Larry Jones reside in Oklahoma. Each is a "consumer" as defined by the TILA, 15 U.S.C. 1602(h), and Regulation Z, 12 C.F.R. § 226.2(a)(11).

4.      Defendant Shauna, Inc. ("Solitaire" or "the dealer") is a New Mexico corporation operating as mobile home dealership called Solitaire Homes. Defendant's principal business is the selling and financing of mobile homes. Defendant's principal place of

business is Albuquerque.  Defendant is a "creditor," as defined in the TILA, 15 U.S.C. §1602(f), and Regulation Z, 12 C.F.R § 226.2(a)(17).

5.   Defendant George Sulima is a resident of Albuquerque, New Mexico.  He is the President of Shauna, Inc. d/b/a Solitaire Homes.  He personally executed on behalf of the dealer the altered documents which formed the mobile home sale and financing transaction.

### Facts

6.   Mr. and Mrs. Jones sought to purchase a Solitaire manufactured home.

7.   Looking for more favorable terms, they located Solitaire, a seller of such homes, through the internet.

8.   The Joneses entered into a series of negotiations with Solitaire over the telephone.  The parties agreed on a purchase price.

9.   The Joneses were to arrange their own real estate loan.  However, Solitaire required payment in full before delivering the home to Oklahoma.  Therefore, Solitaire brought Conseco into the transaction for interim financing.

10.   Solitaire asked the plaintiffs whether they wanted to buy down the interest rate, which would cost them over $5,000 in "points."  However, the Joneses rejected that option, because they intended to refinance quickly, using their own lender.

11.   The dealer sent the plaintiffs a set of documents to sign to close the deal.

12.   One such document was the Retail Installment Contract, which the plaintiffs signed on October 30, 2001 and sent back to the dealer (Exhibit A).

13.   Plaintiffs also signed and returned to the dealer a Purchase Agreement.  Plaintiffs attach this Purchase Agreement as Exhibit B.

14.   Solitaire, through its President, George Sulima, executed the Retail Installment Contract. However, Solitaire did not furnish the plaintiffs an endorsed copy until months after consummation of the transaction.

15.   Plaintiffs attach this Retail Installment Contract, executed by both parties, as Exhibit A.

16.   This Retail Installment Contract omits from the payment schedule the date payments would begin (yellow highlighting), contrary to the requirements of the Truth in Lending Act.

17.   Solitaire, through its President, George Sulima, also executed the Purchase Agreement. However, it did not send the plaintiffs an executed copy.

18.   The plaintiffs believed that their first payment was due January 1, 2002.

19.   Solitaire delivered the manufactured home on about November 6, 2001 to the plaintiffs' homesite in Oklahoma.

20.   Some time after plaintiffs signed the contract October 30, 2001, Solitaire inserted the date of December 1, 2001 as the first payment due date. Plaintiffs attach a copy of that version of the Retail Installment Contract as Exhibit C.

21.   This handwritten date of first payment due is accompanied by initials, purportedly of the buyers (yellow highlighting). The plaintiffs did not initial the contract at that spot; Solitaire forged their initials.

22.   Solitaire assigned the altered Retail Installment Contract to Conseco. Upon information and belief, Conseco securitized the contract and sold it to an investment trust.

23.   Plaintiffs received their first monthly billing statement dated December 7, 2001. It showed a past due payment. Plaintiffs began receiving calls from Conseco about their "late" payment. Through this process they learned that Solitaire had altered the contract after they signed it.

24. As a result of defendants' actions, Conseco has been harassing plaintiffs on a regular basis and has imposed charges attributable to "late" payments, including additional interest.

25. Plaintiffs sought to refinance the contract through another lender. Conseco's quoted payoff was much higher than they anticipated.

26. When Conseco sent them a copy of the executed Purchase Agreement, Plaintiffs discovered that the dealer had buried in the transaction an additional cost to the borrowers of $5,413.84 for points in their loan.

27. The dealer had altered the original Purchase Agreement before sending it to the assignee, adding to it language (yellow highlighting) that "Customers financed $5,413.84 of points in their loan." Plaintiffs attach this altered Purchase Agreement as Exhibit D. Solitaire also falsely certified that this document was a true copy of the original.

28. Furthermore, in the course of the sale transaction Solitaire represented to Plaintiffs that there was sales tax in the amount of $1,500.00 and that an additional $173.00 was needed to pay to public officials. See Exhibits A, B, C and D (green highlighting).

29. Plaintiffs later received confirmation that Solitaire paid only $1,151.50 to the State of Oklahoma, for title fee, excise tax and mail fee, and only $140.00 as a "registration fee."

30. Upon information and belief, Solitaire retained the remaining $381.50 it had collected, without refunding it to the Plaintiffs, in connection with the financing of the home.

### First Claim for Relief: Violation of the TILA

31. The financing transaction was a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z, 12 C.F.R. § 226.2.

32. Defendant's acts and omissions in connection with the extensions of credit violate the Truth in Lending Act and Regulation Z.

33.   Defendant is liable to plaintiff for statutory damages in the amount of twice the Finance Charge, up to $2,000.00, plus actual damages, plus costs and reasonable attorney's fees, for violation of the Act.

## Second Claim for Relief: Fraud or Misrepresentation

34.   Solitaire induced the Joneses to purchase and to finance the mobile home by misrepresentation of material facts.

35.   Solitaire knew such representations to be false, or it made those representations recklessly, or Solitaire had no reasonable grounds for believing those representations were true.

36.   Solitaire intended to deceive the Joneses and intended that they would rely upon its representations and omissions, which they did, to their detriment, suffering damages.

37.   The Joneses are entitled to monetary damages in an amount to be proven at trial, and punitive damages should also be awarded.

## Third Claim for Relief: Unfair Trade Practices

38.   Solitaire's misrepresentations and the omission of material information resulted in excessive charges.

39.   The actions of Solitaire, in the regular course of business, were knowing and willful, and they were deceptive within the meaning of the Unfair Practices Act, § 57-12-2 N.M.S.A.

40.   Plaintiffs are entitled to recover actual damages, trebled, plus costs and attorney's fees.

## Demand for Jury Trial

41.   Plaintiffs hereby demand a trial by jury.

WHEREFORE, Plaintiffs pray that the Court award:

A.   Statutory damages for violations of the TILA;

B.     Actual and punitive damages for fraud or misrepresentation, in an amount to be proven at trial;

C.     Actual or statutory damages, trebled, for violation of the New Mexico Unfair Practices Act;

D.     Costs and reasonable attorney's fees; and

E.     Such other relief as it deems just and proper.

Respectfully submitted,

FEFERMAN & WARREN

RICHARD N. FEFERMAN
Attorneys for Plaintiffs
300 Central Ave., SW, Suite 2000 East
Albuquerque, NM 87102
(505) 243-7773

# Exhibit A

ST-10-00-(1121).01) NH-NC                    AR, CO, ID, IN, MS, NM, NC, RI, SC, TN, UT, VA, WV, WY

# MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT
# AND SECURITY AGREEMENT (CONV. - FHA - VA)  (99)          Date _____          CONSUMER CREDIT
                                                                                  DOCUMENT

JONES, CATHERINE B.

BUYER: JONES, LARRY E., RR2 BOX 727, CHECOTAH, OK 74426

SELLER: GEMCO, INC., SOLITAIRE HOMES, 10736 CENTRAL S.E., ALBUQUERQUE, NM 87123

ASSIGNEE: CONSECO FINANCE SERVICES CORP., 111 LOMAS BLVD NW SUITE 300, ALBUQUERQUE, NM 87103

## FEDERAL TRUTH-IN-LENDING ACT DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total of Payments (The amount I will have paid after I have made all payments as scheduled.) | Total Sale Price (The total cost of my purchase on credit, including my down payment of $ 6000.00 ) |
|---|---|---|---|---|
| 10.41 % | 153368.20 | 67673.00 | 221236.00 | 221236.00 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | 614.55 | Monthly beginning _____ (estimate) |

SECURITY: I am giving a security interest in: N/A   Real property located at: N/A
X  The goods or property being purchased.  N/A  Other (Describe) N/A

FILING FEES: $ 173.00 .  LATE CHARGE: If a payment is more than  15  days late, I will be charged
$5.00 or 5.0% of the unpaid amount of the installment, whichever is less.

PREPAYMENT: If I pay off early, I  N/A  may _____ will not be charged a prepayment penalty.

ASSUMPTION: Someone buying my home  NO  may, subject to conditions,  N/A  will not be allowed to assume the remainder of the Contract on the original terms.

See the Contract document below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.    "e" means an estimate.

BUYER BEWARE: If I do not meet this Contract's obligations, I may lose the property that I bought in this sale.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Sale Price (including Taxes of) $ 1800.00    $ 71800.00
2. Gross Trade-in .......... $ .00
   Less Amount Owed on Trade-in $ .00
   Net Trade-in .............. $ .00
   Description: Make _____
   Year 0000   Size 00 X 00
3. Cash Down Payment .... $ 6000.00
4. Total Down Payment ........................ - $ 6000.00
5. Unpaid Balance of Cash Sale Price (1 - 4) .. = $ 67800.00
6. Paid to Public Officials ........................ + $ 173.00
7. Paid to Insurance Companies ..................... + $ .00
8. Paid to Appraiser ................................ + $ .00
9. Document Fee Paid to Seller ..................... + $ .00
10. Amounts Paid to Others on My Behalf*:
    a. Paid to MORTAR FOR FT/REG. FEE .......... + $ 1412.84
    b. Paid to _____ + $ .00
    c. Paid to _____ + $ .00
    d. Paid to _____ + $ .00
    e. Paid to _____ + $ .00
11. Principal Balance (5 + 6 + 7 + 8 + 9 + 10  b - a.) + $ 73385.84
12. Prepaid Credit Service Charges .................. - $ 5412.84
13. Amount Financed (11 - 12) ...................... $ 67673.00

*Seller, Assignee, and/or their affiliates may receive commissions or other compensation from businesses to whom these charges are due.

### PROPERTY INSURANCE

Physical Damage Insurance is required but I may obtain it from anyone I want that is acceptable to you. If I get the insurance checked below from you or through you, I will pay you

_____ .00  for insurance protection for a term of 00  years.
X  Comprehensive (a  250.00  deductible)
N/A  Flood
X  Liability
N/A  Other _____
N/A  Vendor's Single Interest

### OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE

Credit Life and Disability Insurance are not required to obtain credit and will not be provided unless I sign and agree to pay the additional premium.

The term of this insurance is _____ 00  years.

| N/A Single Credit Life Insurance | $ .00 |
| N/A Joint Credit Life Insurance | $ .00 |
| N/A Single Credit Disability Insurance | $ .00 |
| Total | $ .00 |

X _____
Signature of Buyer(s) Insured                    Date

Bankers Systems, Inc., St. Cloud, MN  Form ST-MHRSLAD1  1/24/2001          ORIGINAL          ST-10-00-10  (1/01)          Page 1 of 5

## CONTRACT AND SECURITY AGREEMENT

1. **DEFINITIONS:** "I," "me," "my," or "us" means the Buyer(s). "You" or "your" means the Seller and also the Assignee (after the Contract is assigned by Seller). The "parties" means the Buyer and Seller, together. "Manufactured Home" means the manufactured home, any other property described below, and the real estate described on page 1, if applicable. "Contract" means this Retail Installment Contract and Security Agreement and separate Deed of Trust or Mortgage if applicable.

| NEW OR USED | YEAR AND MAKE | Manufactured Home MODEL | SERIAL NUMBER | SIZE |
|---|---|---|---|---|
| N | 2002 SOLITAIRE | DN973 | ENIM-OK-3900FB | 28 X 80 |

| X Stove | X Refrigerator | _____ Washer | _____ Dryer | _____ Air Conditioner | _____ Wheels/Axles |
|---|---|---|---|---|---|

| Other (Describe) | DISHWASHER |
|---|---|

2. **PURCHASE:** I have the option of buying the Manufactured Home for the cash price or buying on credit. The cash price is shown on page 1 as the "Cash Sale Price", and the credit price is shown on page 1 as the "Total Sale Price". I choose to buy on credit.

3. **SECURITY INTEREST:** I give you a security interest under the applicable certificate of title law or Uniform Commercial Code in the Manufactured Home, any property added or attached to it, and the real estate described above if applicable, to secure my obligation under this Contract. Unless otherwise stated in this Contract, there are no prior liens on the Manufactured Home. I also grant you a security interest in any interest I may have in proceeds and premium refunds of any insurance and service contracts purchased with this Contract. I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home. To the extent, if any, that any Contract (whether or not accompanied by any one or more original) constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in the applicable jurisdiction) no security interest in any Contract may be created in any document(s) other than the original.

4. **PAYMENTS AND LATE CHARGE:** I will pay you U.S. $ _____76117.32_____ (the "Principal Balance" as shown on page 1), plus interest at the annual rate(s) shown below, according to the payment schedule set forth on page 1, plus other amounts as agreed and allowed by law. It is not your intention to charge any amount which is not allowed by law, but should such amount be charged inadvertently, you will refund it to the Contract balance. I also agree to pay a late charge for late payment as shown on page 1.

5. **N/A APPLY COLORADO UCCC:** I agree with you that, even though the Colorado Uniform Consumer Credit Code may not otherwise apply, this Contract is a consumer credit transaction. This Contract is, therefore, subject to the Colorado UCCC, including the permissible rates and charges.

6. **NSF FEE:** If any payment instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of N/A _____ N/A

7. **PREPAYMENT: I MAY PREPAY THIS LOAN IN WHOLE OR IN PART AT ANY TIME. I WILL NOT PAY A PENALTY UPON PREPAYMENT UNLESS OTHERWISE STATED IN THE NEXT SENTENCE. IF I PREPAY IN FULL WITHIN _____N/A_____ MONTHS OF THE DATE OF THIS NOTE, I WILL PAY YOU A PENALTY OF** _____N/A_____ **N/A** _____ **. PARTIAL PREPAYMENTS WILL NOT EXCUSE OR REDUCE ANY LATER SCHEDULED PAYMENT UNTIL THIS NOTE IS PAID IN FULL.**

8. **COLORADO ONLY - PREPAYMENT:** I may prepay this Contract in full or in part if the payment is not less than $5.00, at any time without penalty. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

9. **SIMPLE INTEREST CONTRACT:** This is a simple interest contract. The annual interest rate(s) is/are 9.50% per annum

interest will accrue upon the unpaid principal balance outstanding from time to time until paid in full. The Finance Charge, Total of Payments and Payment Schedule were computed based on the assumption that payment will be made on the dates scheduled for payment. Early payments will reduce my final payment. Late payments will increase my final payment. My final payment will be equal to all unpaid sums due under this Contract. My promise requires me to pay the final payment on the date due even if the amount of the final payment differs from the amount of the final payment disclosed.

10. **ADDITIONAL FEES:** N/A I agree to pay you an additional, nonrefundable Document Fee of $ N/A that will be N/A paid in cash. N/A financed (see ITEMIZATION OF AMOUNT FINANCED). N/A paid proportionally with each payment.

11. **COLORADO ONLY - ADDITIONAL FINANCE CHARGE:** N/A I agree to pay an additional finance charge of $ N/A that will be N/A paid in cash. N/A added to the Cash Price. See next provision for refundability.

12. **COLORADO ONLY - ADDITIONAL FINANCE CHARGE:** I agree that this fee, or a portion thereof, will be refundable only if the Contract is prepaid and the prepayment causes the recalculated APR to exceed the finance charge allowed by law or if I refinance or consolidate this Contract within one year and the other circumstances contemplated by C.R.S. § 5-2-207 are met.

13. **NO WARRANTIES:** I agree that there are no warranties of any type covering the Manufactured Home. I am buying the Manufactured Home **AS IS** and **WITH ALL FAULTS** and **THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME.** I agree that any implied warranty of merchantability and any implied warranty of fitness for a particular purpose are specifically excluded and do not cover the Manufactured Home. This No Warranties provision does not apply to the extent that any law prohibits it and it does not cover any separate written warranties.

JONES - 5735718

**14. PROTECTION OF THE MANUFACTURED HOME:** I will: (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move, use illegally, sell, lease or otherwise transfer the Manufactured Home; (d) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property unless you consent in writing and state law permits such contrary treatment; and (e) not let anybody else have any interest in the Manufactured Home.

**15. VIRGINIA ONLY - INSURANCE NOTICE:** I may obtain insurance from anyone I want that is acceptable to you. My choice of insurance provider will not affect the credit decision or interest rate.

**16. PROPERTY INSURANCE:** I will keep the Manufactured Home insured against such risks and in such amounts as you may reasonably require with an insurance company satisfactory to you. I will arrange for you to be named as loss payee on the policy. I agree to provide you written evidence of insurance as requested by you from time to time. If you finance the purchase of any such insurance for me, I will repay you for the cost of that insurance, plus interest up to the contract rate of interest. I authorize you to furnish account data to a licensed insurance agent of your choice so such agent may solicit the purchase of credit, property, warranty or other insurance from me. I agree that the insurance company may make any payments due under the policy directly to you, and I direct the insurance company to do so. You may do whatever you think is necessary to be sure that any proceeds of the insurance will be used to repair the Manufactured Home or pay off this Contract. I give you a power of attorney (which I cannot cancel) so that you may do whatever you need to in order to collect the insurance proceeds. If I fail to obtain, maintain or pay for the required insurance, or if I fail to arrange for you to be named as loss payee, you may treat that as a default of my obligations under this Contract, and you may (but are not required to) purchase such insurance. If you purchase such insurance, I will immediately repay you for any amounts you spend in purchasing the insurance, plus interest up to the contract rate of interest or, at your option, pay you over time as a workout of the obligation. If I owe you for any insurance (or for late charges, attorney's fees or collection costs), I understand that I owe an additional sum for these debts beyond my monthly principal and interest payment. My monthly payment will therefore be greater than that stated on page 1 until such additional debts are paid in full.

**17. NOTICE OF PROPOSED INSURANCE:** If so indicated on page 1 of this Contract, credit life insurance coverage and/or credit accident and health insurance coverage will apply to this Contract. The insurance company named on page 1 of this Contract will write the insurance.

The insurance covers only the person(s) signing the request for insurance. The charge for each type of credit insurance to be purchased is as indicated on page 1 of this Contract. The term of insurance will begin as of the date of this Contract and will end on the original due date of this Contract.

Subject to acceptance by the insurance company and within 30 days, a certificate of insurance will be given to the insured. If this Contract is prepaid before it is due, a refund of insurance charges will be made when due.

**18. CREDIT INSURANCE:** CREDIT INSURANCE MAY NOT COVER THE AMOUNT DUE UNDER THIS CONTRACT. YOU SHOULD REVIEW YOUR POLICY OR CERTIFICATE TO DETERMINE THE EXACT AMOUNT OF COVERAGE.

**19. COLLATERAL PROTECTION INSURANCE:** I am giving you a security interest in property to secure this loan. I understand that I must keep this property insured against loss, expense or damage due to fire, theft, collision or other such risks in the amounts you require. Unless I provide evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own.

**20. DEFAULT:** I will be in default on this Contract if any one of the following occurs (except as prohibited by law): (A) I fail to make a payment in full when it is due; (B) I fail to perform any obligation that I have undertaken in this Contract (which includes doing something I have agreed not to do). This includes the promises in the OWNERSHIP AND DUTIES TOWARD PROPERTY section, the INSURANCE section, and any additional promises I make in any separate mortgage or deed of trust; (C) I make any written statement or provide any financial information that is untrue or misleading at the time it is given.

If I default, subject to the Attorney's Fees paragraph below, I agree to pay your reasonable attorney's fees of 15% of the outstanding balance of this Contract (subject to the conditions and limitations of N.C. Gen. Stat. § 6-21.2, if applicable). I may also have to pay other costs you incur to realize on any Property securing this Contract and other potential costs allowed to you by law.

If an event of default occurs as to any one of us, you may exercise your remedies against any or all of us.

**21. REMEDIES:** Unless prohibited by law, if I am in default on this Contract, you have all of the remedies provided by law, this Contract, and any separate personal property security agreement, real estate mortgage, or deed of trust. Before using a remedy, you will send me any notice and wait for any cure period that the law may require for that remedy. Your remedies include the following: (A) You may require me to immediately pay you, subject to any refund required by law, the entire principal balance, plus earned interest and all other agreed charges; (B) You may, but are not required to, pay taxes, fees, expenses, assessments, or other liens or make repairs to the Property if I have not done so. Any amount you pay will be added to the amount I owe you and will be due immediately. This amount will earn interest from the date paid at the rate(s) described in the PROMISE TO PAY AND PAYMENT TERMS section. You may require that I establish and fund an escrow account if one is not already required; (C) You may require me to make the Property available to you at a place you designate that is reasonably convenient to you and me; (D) You may immediately take possession of the Property by legal process or self-help, if you do so lawfully. You may then sell the Property and apply what you receive to your reasonable expenses and then toward my obligations, as allowed by law; (E) You may sue me for additional amounts if the sale proceeds do not pay all I owe you.

Subsections C. and D. (above) apply only to personal property security interests. If this Contract is secured by a mortgage or deed of trust, then the foreclosure of such interest may impose other duties and limitations on your rights and remedies, as provided by law and the mortgage or deed of trust.

By choosing any one or more of these remedies, you do not waive your right to later use another remedy. If you do not act on an event of default, you do not give up your right to later treat that type of event as a default.

I agree that if any notice is required to be given to me of an intended sale or transfer of the Property, notice is reasonable if mailed to my last known address, as reflected in your records, at least 5 days before the date of the intended sale or transfer (or such other period of time as is required by law). When real estate is the security, other rules may apply.

I agree that, subject to my right to recover such property, you may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

If the U.S. Department of Housing and Urban Development insures this Contract under its Title 1 Property Improvement and Manufactured Home Regulations, your right to make me pay off this entire Contract is subject to the limitations of those regulations.

**22. NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Contract shall be given in writing by mailing such notice by certified mail, addressed to me at the Manufactured Home address or at such other address as I may designate by notice to you in writing, and (b) any notice to you shall be given in writing by certified mail, return receipt requested, to your address stated herein or to such other address as you may designate by notice to me in writing.

**23. ATTORNEY'S FEES:** Subject to the Default paragraph above, if you hire an attorney who is not your salaried employee to collect what I owe under this Contract or to get possession of the Manufactured Home or to enforce my agreements herein, I may be required to pay your reasonable attorney's fees plus court costs and actual out-of-pocket expenses. If state law provides for a limit on attorney's fees, I will pay only the legal limit.

**24. ASSUMPTION:** If the Seller's or Assignee's policies in effect at the time permit, an assumption of this Contract by another qualified party may be considered. All assumptions are at the Seller's or Assignee's sole discretion and will be subject to the conditions that are in effect at the time the assumption is requested. All conditions are determined solely by the Seller or Assignee and are subject to change at anytime without notice.

**25. MISCELLANEOUS PROVISIONS:** This written Contract is the only agreement that covers my purchase of the property. This Contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this Contract signed by you. You can decide not to use or enforce any of your rights under this Contract without losing them. For example, you can extend the time for making some payments without extending others. If any part of this Contract cannot be enforced because of a law which prohibits it, all other parts can still be enforced. To the extent allowed by law, I waive the benefit of my homestead and personal property exemptions as to this Contract. My waiver applies only to the property securing payment of this Contract. I agree to cooperate with you regarding any requests after closing to correct errors made concerning this Contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction. If I purchase credit insurance or other elective product with the proceeds of the Contract, and such product is later cancelled and a refund owed, you will credit such refund against the principal balance of the Contract. This Contract is not made until all documentation relating to it has been received by, reviewed by, and accepted by you.

**26. NAME AND LOCATION:** My name and address indicated on page 1 are my exact legal name and principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

**27. ARBITRATION:** All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Contract. The parties agree and understand that the arbitrator shall have all powers provided by law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

---

**28. For Use In Colorado Only**
**DELIVERY DATE OR PRECONDITIONS TO DELIVERY:** _____ N/A _____
N/A
N/A _____ subject to unavoidable delay or delay caused by me.

**DELIVERY:** If the actual date of delivery is more than sixty (60) days after the date of delivery contracted for or more than sixty (60) days after the completion of delivery preconditions previously set forth, unless delay in delivery is unavoidable, or caused by me, at your election, you will either: 1) refund the home sale deposit; or 2) pay a reasonable buyer living expense per diem which relates back to the Contract delivery date.

**BUYER'S RIGHTS:** Unless otherwise specifically provided in writing, I have no legal right to rescind the Contract except upon delinquent delivery subject to unavoidable delay or delay caused by me.

Any earnest money received by you pending delivery of the manufactured home shall be handled as follows. At your discretion, you shall either: 1) hold the deposits in escrow in a separate fiduciary account; or 2) I will be provided with a letter of credit, certificate of deposit, surety bond, or other similar surety filed with the Colorado Attorney General for my benefit. Any escrow deposit complaints against you may be filed with the Colorado Attorney General or the District Attorney for the judicial district where the sale occurred. I may also bring a civil action under the Colorado Consumer Protection Act with regard to any such escrow deposit complaint.

29. ADDITIONAL TERMS:

This Contract will not be accepted by the Assignee for assignment until all documentation relating to it has been received by, reviewed by, and accepted by the Assignee.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NOTICE TO BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT.

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.

| X _Larry E. Jones_ | 10-30-01 | X _Catherine A. Jones_ | 10-30-01 |
|---|---|---|---|
| Signature of Buyer   LARRY E. JONES | Date | Signature of Buyer   CATHERINE A. JONES | Date |

## ASSIGNMENT BY SELLER

For good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Seller hereby sells, assigns, and transfers its entire right, title, and interest in the Contract and the property described therein (the "Property") to Assignee. Such assignment is made pursuant to the terms contained herein and in a separate Dealer Agreement, which is incorporated herein by reference; and pursuant to such policies, procedures, and requirements as issued by the Assignee from time to time.

IN ADDITION TO THE ABOVE, this Assignment includes that certain provision to follow, provided that, if none of the following provisions has been checked by the Seller, this Assignment shall be considered to have been checked "With Recourse": A. "Without Recourse". The assignment of the Contract is and shall be without recourse against the Seller except as provided above and in any separate dealer agreement between Seller and Assignee relating to the purchase of Contracts. B. "Limited Recourse". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Recourse", the Seller will, upon demand, repurchase the Contract from Assignee for the full amount remaining unpaid under the Contract. C. "Repurchase". If the Assignee repossesses the Manufactured Home, the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract. D. "With Recourse". The Seller unconditionally guarantees payment of the full amount remaining unpaid under the Contract and agrees to purchase the Contract from the Assignee, upon demand, for the full amount then unpaid, whenever the Contract shall be in default. E. "Limited Repurchase". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Repurchase", the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract if the Assignee repossesses the Manufactured Home.

Seller, by signing below, executes this Contract and also assigns the sums to the Assignee in accordance with the foregoing provisions. The Seller's Assignment will also include that certain provision set forth above which is checked below:

SHAINA, INC. / SOLITAIRE HOMES

| By: X _____ | | | (Seller) | Date: _____ | | | Title: _President_ |
|---|---|---|---|---|---|---|---|

( X ) A. Without Recourse   (   ) B. Limited Recourse   (   ) C. Repurchase   (   ) D. With Recourse   (   ) E. Limited Repurcha
_____ Payments                                                                                                  _____ Payments

# Exhibit B

# SOLITAIRE HOMES

| ☐ 10724 Central S.E.<br>Albuquerque, NM 87123<br>(505) 294-6565 | ☐ 481 Browning Parkway<br>Farmington, NM 87401<br>(505) 564-3333 | ☐ 903 Highway 314 S.W.<br>Los Lunas, NM 87031<br>(505) 866-9600 | *Our Copy* |

| | |
|---|---|
| BUYER Larry E.   Jones   Catherine A.   Jones | PHONE (913)281-2597   DATE 10/29/2001 |
| ADDRESS 1120 Argentine Blvd Kansas City, KS 66105 | SALESPERSON Todd Vanberg |

| DELIVERY ADDRESS RR 2 BOX 727   CHECOTAH, OK 74426 | | | | | |
|---|---|---|---|---|---|
| MAKE & MODEL | YEAR | NO. ROOMS | FLOOR SIZE | HITCH SIZE | STOCK NUMBER |
| SOLITAIRE   973-PLATINUM PKG | 02 | 4 | 76 | 89 | W |
| SERIAL NUMBER EHIM-OK-3900FB   X☐ NEW  ☐ USED | COLOR P-GUNMETAL | | PROPOSED DELIVERY DATE 90 TO 120 DAYS | | KEY NUMBER |

| OPTIONAL EQUIPMENT, LABOR AND ACCESSORIES | | | BASE PRICE OF UNIT | $ 70000.00 |
|---|---|---|---|---|
| "STANDARD ITEMS" | $ | | OPTIONAL EQUIPMENT | |
| Deliver, Block, Level,and Set Home. | | | | |
| Solitaire will hook up water with heat tape | | | SUB-TOTAL | $ 70000.00 |
| and hook up sewer to existing connections. | | | | |
| up to 20' max. if available at the time | | | SALES TAX | 1500.00 |
| of delivery. | | | | |
| Customer is responsible for utility hookups | | | NON-TAXABLE ITEMS | 173.00 |
| over 20 ft.. | | | VARIOUS FEES AND INSURANCE | |
| Electrical and gas connections require a | | | 1. CASH PURCHASE PRICE | $ 71673.00 |
| licensed plumber and electrician at the buyer | | | TRADE-IN ALLOWANCE | $ |
| cost. | | | LESS BAL. DUE on above | $ |
| Solitaire will deliver 2 sets of steps. | | | NET ALLOWANCE | $ |
| Wheels,hitch(s), axles, and tires are the | | | CASH DOWN PAYMENT | $ 4000.00 |
| property of Solitaire Homes to be returned | | | CASH AS AGREED (       ) | $ |
| on delivery. | | | 2. LESS TOTAL CREDITS | $ 4000.00 |
| Loan must be closed within 5 days of home | | | SUB-TOTAL | $ |
| arriving from factory with balance paid in | | | SALES TAX (if Not Included Above) | |
| full before home delivery can be scheduled. | | | 3. Unpaid Balance of Cash Sale Price | $ 67673.00 |
| | | | REMARKS: | |
| If buyer is trading in a | | | | |
| home, buyer agrees to provide | | | | |
| dealer with tax release at | | | | |
| closing.  Buyer understands | | | | |
| that trade is subject to | | | | |
| manager's inspection and trade | | | | |
| allowance could be adjusted | | | | |
| for the condition of the home. | | | | |
| | | | | |
| REF. AIR INC | | | | |
| | | | | |
| BALANCE CARRIED TO OPTIONAL EQUIPMENT | $ | | | |

| DESCRIPTION OF TRADE-IN | | YEAR | MO. |
|---|---|---|---|
| MAKE | MODEL | BEDROOMS | |
| TITLE NO. | SERIAL NO. | COLOR | |
| AMOUNT OWING TO WHOM | | | |

ANY DEBT BUYER OWES ON TRADE-IN IS TO BE PAID BY ☐ DEALER ☐ BUYER

Dealer and Buyer certify that the additional terms and conditions printed on the other side of this contract are agreed to as a part of this agreement, the same as if printed above the signatures. Buyer is purchasing the above described trailer, manufactured home or vehicle; the optional equipment and accessories, the insurance as described has been voluntary; that my trade-in is free from all claims whatsoever, except as noted.

| SOLITAIRE HOMES | DEALER | SIGNED X | BUYER |
|---|---|---|---|
| | | SOCIAL SECURITY NO. | |
| | | SIGNED X Catherine... | BUYER |
| | | SOCIAL SECURITY NO. | |

FORM SOON?

A PLAIN LANGUAGE PURCHASE AGREEMENT  Rev 7149<br>Copyright ©1983 JENKINS BUSINESS FORMS HADDONFIELD...

# Exhibit C

GT-TD-SD-118 (1/01)  MH-SC   AR, CO, ID, IN, MS, NM, NC, RI, SC, TN, UT, VA, WV, WY

## MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT (CONV. - FHA - VA) (#)   CONSUMER CREDIT DOCUMENT

Date 10/26/01

JONES, CATHERINE A.

BUYER: JONES, LARRY E., RR3 BOX 727, CHICOTAH, OK 74426

SELLER: HELMS, INC., SOLITAIRE HOMES, 10724 CENTRAL S.E., ALBUQUERQUE, NM 87123

ASSIGNEE: CONSECO FINANCE SERVICING CORP., 111 LOMAS BLVD NW SUITE 600, ALBUQUERQUE, NM 87102

### FEDERAL TRUTH-IN-LENDING ACT DISCLOSURE

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total of Payments (The amount I will have paid after I have made all payments as scheduled.) | Total Sale Price (The total cost of my purchase on credit, including my down payment of $ 6000.00) |
|---|---|---|---|---|
| 10.41 % | 152541.00 | $ 67073.00 | $ 221235.00 | $ 221235.00 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | 614.55 | Monthly beginning January (estimate) |

SECURITY: I am giving a security interest in: N/A  Real property located at: N/A
X  The goods or property being purchased. N/A  Other (Describe) N/A
FILING FEES $ 173.00 .  LATE CHARGE: If a payment is more than 15 days late, I will be charged $3.00 or 5.0% of the unpaid amount of the installment, whichever is less
PREPAYMENT: If I pay off early, I  N/A may  XX  will not be charged a prepayment penalty.
ASSUMPTION: Someone buying my home  N/A , subject to conditions,  N/A  will not be allowed to assume the remainder of the Contract on the original terms.
See the Contract documents below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.   "e" means an estimate.

BUYER'S RIGHT TO CANCEL: If I do not meet the Contract's obligations, I may lose the property that I bought in this sale.

| ITEMIZATION OF THE AMOUNT FINANCED | | PROPERTY INSURANCE I MUST HAVE |
|---|---|---|
| 1. Cash Sale Price (including Taxes of) $ 3500.00 | $ 71800.00 | Physical damage insurance is required but I may obtain it from anyone I want that is acceptable to you. If I get the insurance checked below from you or through you, I will pay $ .00 for insurance protection for a term of 00 Years. |
| 2. Gross Trade-in ........ $ .00 | | X  Comprehensive ($ 500.00  deductible) |
| Less Amount Owed on Trade-in $ .00 | | N/A  Flood |
| Net Trade-in .............. $ .00 | | X  Liability |
| Description: Make | | N/A  Other |
| Year 0000       Size 00 X 00 | | N/A  Vendor's Single Interest |
| 3. Cash Down Payment ... $ 6000.00 | | |
| 4. Total Down Payment ................ – $ | 6000.00 | OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE |
| 5. Unpaid Balance of Cash Sale Price (1 - 4) ... + $ | 67500.00 | Credit Life and Disability insurance are not required to obtain credit and will not be provided unless I sign and agree to pay the additional premium. |
| 6. Paid to Public Officials ................... + $ | 173.00 | The term of this insurance is 00 years. |
| 7. Paid to Insurance Companies ............. + $ | .00 | |
| 8. Paid to Appraiser ......................... + $ | .00 | N/A  Single Credit Life Insurance $ .00 |
| 9. Document Fee Paid To Seller ............ + $ | .00 | N/A  Joint Credit Life Insurance $ .00 |
| 10. Amounts Paid to Others on My Behalf *: | | N/A  Single Credit Disability Insurance $ .00 |
| a. Paid to ORVIS TAX SERVICE, INC + $ | 1413.84 | Total $ .00 |
| b. Paid to + $ | .00 | X |
| c. Paid to + $ | .00 | Signature of Buyer(s) Insured    Date |
| d. Paid to + $ | .00 | |
| e. Paid to + $ | .00 | |
| 11. Principal Balance (5 + 6 + 7 + 8 + 9 + 10 ) = $ | 73086.84 | |
| 12. Prepaid Credit Service Charges ......... – $ | 1413.84 | |
| 13. Amount Financed (11 - 12) ................. = $ | 67073.00 | |

*Seller, Assignee, and/or their affiliates may receive commissions or other compensation from businesses to whom these charges are due.

© Robert Coppens, Inc., St. Cloud, MN  Form GT-MH/SLAD-1  1/04/2001   ORIGINAL   GT-TD-SD-118 (1/01)   Page 1 of 8

Received: 10/25/01  3:1...  0000000000 -> SOLITAI  ALB;  Page 4

JONES - 5735718

## CONTRACT AND SECURITY AGREEMENT

1. **DEFINITIONS:** "I," "me," "my," or "us" means the Buyer(s). "You" or "your" means the Seller and also the Assignee (after the Contract is assigned by Seller). The "parties" means the Buyer and Seller, together. "Manufactured Home" means the manufactured home, any other property described below, and the real estate described on page 1, if applicable. "Contract" means this Retail Installment Contract and Security Agreement and separate Deed of Trust or Mortgage if applicable.

| NEW OR USED | Manufactured Home |  |  |  |
|---|---|---|---|---|
| | YEAR AND MAKE | MODEL | SERIAL NUMBER | SIZE |
| X | 2002 SOLITAIRE | DW973 | KBIH-OK-3900FB | 28 X 60 |

| X | Stove | X | Refrigerator | ___ Washer | ___ Dryer | ___ Air Conditioner | ___ Wheels/Axles |
|---|---|---|---|---|---|---|---|

Other (Describe)  DISHWASHER

2. **PURCHASE:** I have the option of buying the Manufactured Home for the cash price or buying on credit. The cash price is shown on page 1 as the "Cash Sale Price", and the credit price is shown on page 1 as the "Total Sale Price". I choose to buy on credit.

3. **SECURITY INTEREST:** I give you a security interest under the applicable certificate of title law or Uniform Commercial Code in the Manufactured Home, any property added or attached to it, and the real estate described above if applicable, to secure my obligation under this Contract. Unless otherwise stated in this Contract, there are no prior liens on the Manufactured Home. I also grant you a security interest in any interest I may have in proceeds and premium refunds of any insurance and service contracts purchased with this Contract. I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home. To the extent, if any, that any Contract (whether or not accompanied by any one or more original) constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in the applicable jurisdiction) no security interest in any Contract may be created in any document(s) other than the original.

4. **PAYMENTS AND LATE CHARGE:** I will pay you U.S. $ ___76117.33___ (the "Principal Balance" as shown on page 1), plus interest at the annual rate(s) shown below, according to the payment schedule set forth on page 1, plus other amounts as agreed and allowed by law. It is not your intention to charge any amount which is not allowed by law, but should such amount be charged inadvertently, you will refund it to the Contract balance. I also agree to pay a late charge for late payment as shown on page 1.

5. **N/A APPLY COLORADO UCCC:** I agree with you that, even though the Colorado Uniform Consumer Credit Code may not otherwise apply, this Contract is a consumer credit transaction. This Contract is, therefore, subject to the Colorado UCCC, including the permissible rates and charges.

6. **NSF FEE:** If any payment instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of ___N/A___
N/A

7. **PREPAYMENT: I MAY PREPAY THIS LOAN IN WHOLE OR IN PART AT ANY TIME. I WILL NOT PAY A PENALTY UPON PREPAYMENT UNLESS OTHERWISE STATED IN THE NEXT SENTENCE. IF I PREPAY IN FULL WITHIN ___N/A___ MONTHS OF THE DATE OF THIS NOTE, I WILL PAY YOU A PENALTY OF** N/A
___N/A___  **. PARTIAL PREPAYMENTS WILL NOT EXCUSE OR REDUCE ANY LATER SCHEDULED PAYMENT UNTIL THIS NOTE IS PAID IN FULL.**

8. **COLORADO ONLY - PREPAYMENT:** I may prepay this Contract in full or in part if the payment is not less than $5.00, at any time without penalty. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

9. **SIMPLE INTEREST CONTRACT:** This is a simple interest contract. The annual interest rate(s) is/are 9.50% per annum

Interest will accrue upon the unpaid principal balance outstanding from time to time until paid in full. The Finance Charge, Total of Payments and Payment Schedule were computed based on the assumption that payment will be made on the dates scheduled for payment. Early payments will reduce my final payment. Late payments will increase my final payment. My final payment will be equal to all unpaid sums due under this Contract. My promise requires me to pay the final payment on the date due even if the amount of the final payment differs from the amount of the final payment disclosed.

10. **N/A ADDITIONAL FEES:** I agree to pay you an additional, nonrefundable Document Fee of $ ___N/A___ that will be ___N/A___ paid in cash. ___N/A___ financed (see ITEMIZATION OF AMOUNT FINANCED). ___N/A___ paid proportionally with each payment.

11. **COLORADO ONLY - N/A ADDITIONAL FINANCE CHARGE:** I agree to pay an additional finance charge of $ ___N/A___ that will be ___N/A___ paid in cash. ___N/A___ added to the Cash Price. See next provision for refundability.

12. **COLORADO ONLY - ADDITIONAL FINANCE CHARGE:** I agree that this fee, or a portion thereof, will be refundable only if the Contract is prepaid and the prepayment causes the recalculated APR to exceed the finance charge allowed by law or if I refinance or consolidate this Contract within one year and the other circumstances contemplated by C.R.S. 5-2-207 are met.

13. **NO WARRANTIES:** I agree that there are no warranties of any type covering the Manufactured Home. I am buying the Manufactured Home **AS IS** and **WITH ALL FAULTS** and **THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME.** I agree that any implied warranty of merchantability and any implied warranty of fitness for a particular purpose are specifically excluded and do not cover the Manufactured Home. This No Warranties provision does not apply to the extent that any law prohibits it and it does not cover any separate written warranties.

Bankers Systems, Inc., St. Cloud, MN Form GT-MHRCLAZ-1 1/24/2001          ORIGINAL          GT-10-00-110 (1/01)          (page 2 of 5)

JONES - 5735718

**14. PROTECTION OF THE MANUFACTURED HOME:** I will: (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move, use illegally, sell, lease or otherwise transfer the Manufactured Home; (d) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property unless you consent in writing and state law permits such contrary treatment; and (e) not let anybody else have any interest in the Manufactured Home.

**15. VIRGINIA ONLY - INSURANCE NOTICE:** I may obtain insurance from anyone I want that is acceptable to you. My choice of insurance provider will not affect the credit decision or interest rate.

**16. PROPERTY INSURANCE:** I will keep the Manufactured Home insured against such risks and in such amounts as you may reasonably require with an insurance company satisfactory to you. I will arrange for you to be named as loss payee on the policy. I agree to provide you written evidence of insurance as requested by you from time to time. If you finance the purchase of any such insurance for me, I will repay you for the cost of that insurance, plus interest up to the contract rate of interest. I authorize you to furnish account data to a licensed insurance agent of your choice so such agent may solicit the purchase of credit, property, warranty or other insurance from me. I agree that the insurance company may make any payments due under the policy directly to you, and I direct the insurance company to do so. You may do whatever you think is necessary to be sure that any proceeds of the insurance will be used to repair the Manufactured Home or pay off this Contract. I give you a power of attorney (which I cannot cancel) so that you may do whatever you may need to in order to collect the insurance proceeds. If I fail to obtain, maintain or pay for the required insurance, or if I fail to arrange for you to be named as loss payee, you may treat that as a default of my obligations under this Contract, and you may (but are not required to) purchase such insurance. If you purchase such insurance, I will immediately repay you for any amounts you spend in purchasing the insurance, plus interest up to the contract rate of interest or, at your option, pay you over time as a workout of the obligation. If I owe you for any insurance (or for late charges, attorney's fees or collection costs), I understand that I owe an additional sum for these debts beyond my monthly principal and interest payment. My monthly payment will therefore be greater than that stated on page 1 until such additional debts are paid in full.

**17. NOTICE OF PROPOSED INSURANCE:** If so indicated on page 1 of this Contract, credit life insurance coverage and/or credit accident and health insurance coverage will apply to this Contract. The insurance company named on page 1 of this Contract will write the insurance.

The insurance covers only the person(s) signing the request for insurance. The charge for each type of credit insurance to be purchased as indicated on page 1 of this Contract. The term of insurance will begin as of the date of this Contract and will end on the original due date of this Contract.

Subject to acceptance by the insurance company and within 30 days, a certificate of insurance will be given to the insured. If this Contract is prepaid before it is due, a refund of insurance charges will be made when due.

**18. CREDIT INSURANCE: CREDIT INSURANCE MAY NOT COVER THE AMOUNT DUE UNDER THIS CONTRACT. YOU SHOULD REVIEW YOUR POLICY OR CERTIFICATE TO DETERMINE THE EXACT AMOUNT OF COVERAGE.**

**19. COLLATERAL PROTECTION INSURANCE:** I am giving you a security interest in property to secure this loan. I understand that I must keep this property insured against loss, expense or damage due to fire, theft, collision or other such risks in the amounts you require. Unless I provide evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own.

**20. DEFAULT:** I will be in default on this Contract if any one of the following occurs (except as prohibited by law): (A) I fail to make a payment in full when it is due; (B) I fail to perform any obligation that I have undertaken in this Contract (which includes doing something I have agreed not to do). This includes the promises in the OWNERSHIP AND DUTIES TOWARD PROPERTY section, the INSURANCE section, and any additional promises I make in any separate mortgage or deed of trust; (C) I make any written statement or provide any financial information that is untrue or misleading at the time it is given.

If I default, subject to the Attorney's Fees paragraph below, I agree to pay your reasonable attorney's fees of 15% of the outstanding balance of this Contract (subject to the conditions and limitations of N.C. Gen. Stat ◦ 6-21.2, if applicable). I may also have to pay other costs you incur to realize on any Property securing this Contract and other potential costs allowed to you by law.

If an event of default occurs as to any one of us, you may exercise your remedies against any or all of us.

**21. REMEDIES:** Unless prohibited by law, if I am in default on this Contract, you have all of the remedies provided by law, this Contract, and any separate personal property security agreement, real estate mortgage, or deed of trust. Before using a remedy, you will send me any notice and wait for any cure period that the law may require for that remedy. Your remedies include the following: (A) You may require me to immediately pay you, subject to any refund required by law, the entire principal balance, plus earned interest and all other agreed charges; (B) You may, but are not required to, pay taxes, fees, expenses, assessments, or other liens or make repairs to the Property if I have not done so. Any amount you pay will be added to the amount I owe you and will be due immediately. This amount will earn interest from the date paid at the rate(s) described in the PROMISE TO PAY AND PAYMENT TERMS section. You may require that I establish and fund an escrow account if one is not already required; (C) You may require me to make the Property available to you at a place you designate that is reasonably convenient to you and me; (D) You may immediately take possession of the Property by legal process or self-help, if you do so lawfully. You may then sell the Property and apply what you receive to your reasonable expenses and then toward my obligations, as allowed by law; (E) You may sue me for additional amounts if the sale proceeds do not pay all I owe you.

Subsections C. and D. (above) apply only to personal property security interests. If this Contract is secured by a mortgage or deed of trust, then the foreclosure of such interest may impose other duties and limitations on your rights and remedies, as provided by law and the mortgage or deed of trust.

By choosing any one or more of these remedies, you do not waive your right to later use another remedy. If you do not act on an event of default, you do not give up your right to later treat that type of event as a default.

I agree that if any notice is required to be given to me of an intended sale or transfer of the Property, notice is reasonable if mailed to my last known address, as reflected in your records, at least 5 days before the date of the intended sale or transfer (or such other period of time as is required by law). When real estate is the security, other rules may apply.

JONES - 5735718

I agree that, subject to my right to recover such property, you may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

If the U.S. Department of Housing and Urban Development insures this Contract under its Title 1 Property Improvement and Manufactured Home Regulations, your right to make me pay off this entire Contract is subject to the limitations of those regulations.

**22. NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Contract shall be given in writing by mailing such notice by certified mail, addressed to me at the Manufactured Home address or at such other address as I may designate by notice to you in writing, and (b) any notice to you shall be given in writing by certified mail, return receipt requested, to your address stated herein or to such other address as you may designate by notice to me in writing.

**23. ATTORNEY'S FEES:** Subject to the Default paragraph above, if you hire an attorney who is not your salaried employee to collect what I owe under this Contract or to get possession of the Manufactured Home or to enforce my agreements herein, I may be required to pay your reasonable attorney's fees plus court costs and actual out-of-pocket expenses. If state law provides for a limit on attorney's fees, I will pay only the legal limit.

**24. ASSUMPTION:** If the Seller's or Assignee's policies in effect at the time permit, an assumption of this Contract by another qualified party may be considered. All assumptions are at the Seller's or Assignee's sole discretion and will be subject to the conditions that are in effect at the time the assumption is requested. All conditions are determined solely by the Seller or Assignee and are subject to change at anytime without notice.

**25. MISCELLANEOUS PROVISIONS:** This written Contract is the only agreement that covers my purchase of the property. This Contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this Contract signed by you. You can decide not to use or enforce any of your rights under this Contract without losing them. For example, you can extend the time for making some payments without extending others. If any part of this Contract cannot be enforced because of a law which prohibits it, all other parts can still be enforced. To the extent allowed by law, I waive the benefit of my homestead and personal property exemptions as to this Contract. My waiver applies only to the property securing payment of this Contract. I agree to cooperate with you regarding any requests after closing to correct errors made concerning this Contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction. If I purchase credit insurance or other elective product with the proceeds of the Contract, and such product is later cancelled and a refund owed, you will credit such refund against the principal balance of the Contract. This Contract is not made until all documentation relating to it has been received by, reviewed by, and accepted by you.

**26. NAME AND LOCATION:** My name and address indicated on page 1 are my exact legal name and principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

**27. ARBITRATION:** All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Contract. The parties agree and understand that the arbitrator shall have all powers provided by law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

---

**28. For Use in Colorado Only**

**DELIVERY DATE OR PRECONDITIONS TO DELIVERY:** _____ N/A

N/A _____

N/A _____ subject to unavoidable delay or delay caused by me.

**DELIVERY:** If the actual date of delivery is more than sixty (60) days after the date of delivery contracted for or more than sixty (60) days after the completion of delivery preconditions previously set forth, unless delay in delivery is unavoidable, or caused by me, at your election, you will either: 1) refund the home sale deposit; or 2) pay a reasonable buyer living expense per diem which relates back to the Contract delivery date.

**BUYER'S RIGHTS:** Unless otherwise specifically provided in writing, I have no legal right to rescind the Contract except upon delinquent delivery subject to unavoidable delay or delay caused by me.

Any earnest money received by you pending delivery of the manufactured home shall be handled as follows. At your discretion, you shall either: 1) hold the deposits in escrow in a separate fiduciary account; or 2) I will be provided with a letter of credit, certificate of deposit, surety bond, or other similar surety filed with the Colorado Attorney General for my benefit. Any escrow deposit complaints against you may be filed with the Colorado Attorney General or the District Attorney for the judicial district where the sale occurred. I may also bring a civil action under the Colorado Consumer Protection Act with regard to any such escrow deposit complaint.

---

JONES - 5735718

**29. ADDITIONAL TERMS:**

This Contract will not be accepted by the Assignee for assignment until all documentation relating to it has been received by, reviewed by, and accepted by the Assignee.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE TO BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT.**
**BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.**

X _Larry E. Jones_ 10-30-01     X _Catherine E. Jones_ 10-30-01
Signature of Buyer   LARRY E. JONES   Date     Signature of Buyer   CATHERINE E. JONES   Date

**ASSIGNMENT BY SELLER**

For good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Seller hereby sells, assigns, and transfers its entire right, title, and interest in the Contract and the property described therein (the "Property") to Assignee. Such assignment is made pursuant to the terms contained herein and in a separate Dealer Agreement, which is incorporated herein by reference; and pursuant to such policies, procedures, and requirements as issued by the Assignee from time to time.
IN ADDITION TO THE ABOVE, this Assignment includes that certain provision to follow, provided that, if none of the following provisions has been checked by the Seller, this Assignment shall be considered to have been checked "With Recourse": A.  "Without Recourse". The assignment of this Contract is and shall be without recourse against the Seller except as provided above and in any separate dealer agreement between Seller and Assignee relating to the purchase of Contracts B. "Limited Recourse". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Recourse", the Seller will, upon demand, repurchase the Contract from Assignee for the full amount remaining unpaid under the Contract. C. "Repurchase". If the Assignee repossesses the Manufactured Home, the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract. D. "With Recourse". The Seller unconditionally guarantees payment of the full amount remaining unpaid under the Contract and agrees to purchase the Contract from the Assignee, upon demand, for the full amount then unpaid, whenever the Contract shall be in default. E. "Limited Repurchase". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Repurchase", the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract if the Assignee repossesses the Manufactured Home.

Seller, by signing below, executes this Contract and also assigns the same to the Assignee in accordance with the foregoing provisions. The Seller's Assignment will also include that certain provision set forth above which is checked below:
SHAUNA, INC. , SOLITAIRE HOMES          Date: 10-30-01
By: X _____                    (Seller)   Title: _____
( X ) A. Without Recourse  (    ) B. Limited Recourse  (    ) C. Repurchase  (    ) D. With Recourse  (    ) E. Limited Repurchase
                              _____ Payments                                                    _____ Payments

# Exhibit D

**SOLITAIRE HOMES**

| | | |
|---|---|---|
| Larry E.   Jones      Catherine A.   Jones   (913)281-2597 | | 10/29/2001 |
| 1120 Argentine Blvd Kansas City, KS 66105 | | Todd Vanberg |

RR 2 BOX 727          CHECOTAH, OK 74426

SOLITAIRE    973-PLATINUM PKG      02   4   76

FWTM-OK-3950FB         XX NEW  CLASS   P-GUNMETAL        90 TO 120 DAYS

| | |
|---|---|
| **STANDARD ITEMS** | **OPTIONAL EQUIPMENT** |
| Delivery, block, level, and set home. | |
| Solitaire will hook up water with heat tape | |
| and hook up sewer to existing connections. | |
| up to 20' max. If available at the time | SALES TAX   1500.00 |
| of delivery. | 173.00 |
| Customer is responsible for utility hookups | |
| over 20 ft.. | 71875.00 |
| Electrical and gas connections require a | |
| licensed plumber and electrician at the buyer's | |
| cost. | |
| Solitaire will deliver 2 sets of items. | |
| Wheels, Hitch(s), axles, and tires are the | 4000.00 |
| property of Solitaire Homes to be returned | |
| on delivery. | 4000.00 |
| Loan must be closed within 3 days of home | |
| arriving from factory with balance paid in | |
| full before home delivery can be scheduled. | 67875.00 |

PRICE OF UNIT $ 70000.00

SUB-TOTAL $ 70000.00

Customers financed $5413.84 of points in their loan.

If buyer is trading in a
home, buyer agrees to provide
trailer with its holders at
closing. Buyer understands
that trade is subject to
Solitaire's inspection and trade
allowance could be adjusted
for the condition of the home.

I certify that this
is a true copy of the original